# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING, *as Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers*,

    Plaintiff,

      v.

BELL, *et al.*,

    Defendants.

**Civil Action No. 13-1937 (CKK)**

## MEMORANDUM OPINION
(February 11, 2015)

Plaintiff, Michael R. Fanning, Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Pension Fund" or "the Fund"), filed this Rule 22 interpleader action to resolve a dispute between Defendants over the proper beneficiaries entitled to the Death Benefit payable from Plaintiff as a result of the death of James Harvey Bell ("Mr. Bell" or "decedent"). Presently before the Court is Plaintiff's Motion for Summary Judgment arguing that the Central Pension Fund did not abuse its discretion in denying Defendant Darlene Evelyn Bell's claim to the Death Benefit and awarding the Death Benefit to decedent's four grandchildren: James Austin Wayne Bell, J.C.B., C.I.W., and C.J.W. Upon consideration of the pleadings,[1] the relevant legal authorities, and the

---

[1] Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."), ECF No. [23]; Plaintiff's Statement of Undisputed Facts ("Pl.'s Stmt."), ECF No. [23-2]; Administrative Record ("Appx."), ECF No. [23-5]-[23-6]; Response by Darlene Evelyn Bell ("D.E.B. Resp."), ECF No. [24]; Response by Selena Marie Wall ("S.M.W. Resp."), ECF No. [27]; Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Reply"), ECF No. [26].

record as a whole, the Court finds that the Central Pension Fund did not abuse its discretion in its determination of the appropriate beneficiaries entitled to the Death Benefit.   Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED.

## I.   BACKGROUND

The following facts are drawn from Plaintiff's Statement of Material Facts as to which There is No Genuine Dispute.  All of the Defendants have failed to comply with Federal Rule of Civil Procedure 56(c)(1) and Local Civil Rule 7(h) and to provide a "statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  LCvR 7(h)(1).  Although the Court could treat Plaintiff's statement of facts as conceded, *see* Fed. R. Civ. P. 56(e) (where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion"), the Court will nevertheless rule on the merits of Plaintiff's Motion for Summary Judgment.  Accordingly, the Court will cite to Plaintiff's Statement of Material Facts, but note if a Defendant disputes any of Plaintiff's factual allegations in his or her Response to Plaintiff's Motion for Summary Judgment.

### A.  Factual History

The Central Pension Fund of the International Union of Operating Engineers and Participating Employers is a defined benefit, multi-employer pension fund which provides retirement, death, and related benefits to individuals who have worked in the operating industry throughout the United States.  Pl.'s Stmt. ¶¶ 1, 4.  James Harvey Bell was an active participant in the Central Pension Fund at the time of his death on April 24, 2012, at age 58.  *Id.* ¶¶ 9, 11. Under Section 12.03 of the Central Pension Fund's Plan of Benefits ("the Plan"), a Death Benefit is payable to Mr. Bell's designated Beneficiary in "an amount equal to all of the Participating

Employers' contributions made to the Plan on decedent's behalf as of the date of death . . . ." *Id.*

¶ 24.  The amount of the Participating Employers' contributions on the date of Mr. Bell's death

was $63,216.36.  *Id.* ¶ 25.

Under Section 12.03(b) of the Plan, the Death Benefit is payable to the decedent's

"beneficiary."  Plan of Benefits, Appx. 80, § 12.03(b).  The term "beneficiary" is defined in the

Plan of Benefits as

> a person or other entity designated by a Participant in the manner provided by the
> Plan, or by the terms of the Plan itself, who is or may become entitled to receive a
> benefit under the Plan.  The term "Beneficiary" shall also refer to any spouse,
> former spouse, child or other dependent of a Participant, who is recognized by a
> domestic relations order as having a right to receive all or a portion of the
> Participant's benefit . . . .

*Id.* at Appx. 67, § 1.06.  In turn, Section 12.05 of the Plan provides that

> [e]ach Participant may designate on a form furnished by the Board a Beneficiary
> to receive the death benefit as indicated in Section[] 12.03 . . . .  In the event there
> is a death benefit payable . . . and there is no Beneficiary designated under this
> Section 12.05 then surviving, the death benefit shall be payable in a lump
> sum to the first of the following classes of successive beneficiaries then
> surviving:   the Participant's (a) spouse;  (b) children and legally adopted
> children; (c) parents; (d) brothers and sisters; (e) executors or administrators in a
> representative capacity.

*Id.* at Appx. 84-85, § 12.05.  Importantly, if the decedent has a surviving "Qualified Spouse,"[2]

that spouse is entitled to a Qualified Preretirement Surviving Spouse Annuity, and the Death

Benefit provided under Section 12.03 of the Plan "shall not be payable."  *Id.* at Appx. 78, 81, §§

12.01, 12.03.

At the time of his death in 2012, Mr. Bell was not married.  Pl.'s Stmt. ¶ 12.  Mr. Bell

---

[2] The Plan defines "Qualified Spouse" in relevant part as "the legal married husband or
wife of a Participant, who was married to the Participant . . . for a period of not less than twelve
(12) months immediately prior to the Participant's date of death, or a former spouse of a
Participant who was designated as a Qualified Spouse pursuant to a Qualified Domestic
Relations Order . . . ."  Plan of Benefits, Appx. 71, § 1.34.

was divorced from Darlene Evelyn Bell ("Ms. Bell") in 2002.  *Id.* ¶ 21.  On November 4, 2011, the Central Pension Fund received a Designation of Beneficiary form designating Diane M. Ballard, Mr. Bell's girlfriend, as Mr. Bell's beneficiary.  *Id.* ¶¶ 14, 29.  It is undisputed that this form was the first Designation of Beneficiary form received by the Central Pension Fund concerning Mr. Bell.  *Id.* ¶ 30.  On November 16, 2011, the Central Pension Fund received a second Designation of Beneficiary form signed by Selena Marie Wall ("Ms. Wall"), Mr. Bell's daughter, designating Mr. Bell's four grandchildren as his Beneficiaries.  *Id.* ¶¶ 16, 31, 32.  The second Designation of Beneficiary form was accompanied by an Order for Emergency Appointment of Fiduciary naming Ms. Wall as Mr. Bell's emergency fiduciary.  *Id.* ¶ 33.

### B.  Procedural History

On September 28, 2012, the Central Pension Fund received a Statement of Claim for Death Benefits on behalf of Ms. Bell.  *Id.* ¶ 38; Statement of Claim for Death Benefits, Appx. 111.  On November 1, 2012, the Central Pension Fund determined Ms. Bell was not entitled to the Death Benefit payable as a result of Mr. Bell's death.  Pl.'s Stmt. ¶ 38 (citing Nov. 1, 2012, Denial Letter, Appx. 116).  The Central Pension Fund explained that Ms. Bell was not entitled to the Death Benefit because at the time of Mr. Bell's death, Ms. Bell was divorced from Mr. Bell and the Plan Administrators "never received any actual or proposed Qualified Domestic Relations Order (QDRO) assigning any interest to Darlene Bell" nor a designation of beneficiary form designating Ms. Bell as Mr. Bell's beneficiary.  Nov. 1, 2012, Denial Letter, Appx. 116. Ms. Bell subsequently appealed the decision to the Board of Trustees which denied her appeal in February 2013.  Pl.'s Stmt. ¶¶ 39-43.

In May 2013, the Central Pension Fund was contacted by the Kentucky State Police who advised that they were conducting a criminal investigation into the validity of the Designation of

Beneficiary forms pertaining to Mr. Bell's pension.  *Id.* ¶ 44.   However, "no information concerning the results of the criminal investigation or actual charges was supplied to the Trustees in the administrative record before they made the decisions under review in this case."  *Id.* ¶ 45.

In July 2013, Ms. Bell, through her attorney, again contacted the Central Pension Fund arguing that she was entitled to the Death Benefit because her divorce from Mr. Bell was not final.  *Id.* ¶ 46 (citing July 11, 2013, Letter, Appx. 138-39).   On August 28, 2013, the Central Pension Fund again denied Ms. Bell's claim to the Death Benefit, explaining that the Fund determined Ms. Bell's divorce from Mr. Bell to be final because the "Interlocutory Decree of Dissolution of Marriage" issued to Mr. and Ms. Bell was "interlocutory" only in so far as "the court reserved jurisdiction to address property distribution matters."   Aug. 28, 2013, Letter, Appx. 155.   The Fund noted that, as to the dissolution of the marriage, the Decree "unequivocally provides that "the parties' marriage . . . is hereby dissolved and each of the parties is hereby restored to all rights of a single person."   *Id.* Ms. Bell appealed the Fund's determination to the Board of Trustees which in turn denied her appeal.  Pl.'s Stmt. ¶¶ 48-50.

The Central Pension Fund found the November 16, 2011, Designation of Beneficiary form signed by Ms. Wall to be valid.  The Central Pension Fund observed that Ms. Wall did not have a conflict of interest in signing the form because she did not designate herself Beneficiary in the November 16, 2011, designation, but instead designated Mr. Bell's four grandchildren— the children of Ms. Wall and her brother (Mr. Bell's son), James Michael Bell.  Appx. 98.  The Fund further found that the Order for Emergency Appointment of Fiduciary was "clear that [Ms. Wall] has '. . . full and complete guardianship including the ability to make medical and financial decisions.' "   Appx. 128.   Moreover, the Fund found that the Order gave Ms. Wall "broad authority to execute legal instruments and handle financial responsibilities of the decedent."

Appx. 98.  Accordingly, the Fund determined that the Death Benefit was payable to Mr. Bell's four grandchildren—James Austin Wayne Bell, J.C.B., C.I.W., and C.J.W.—as designated in the November 16, 2011, Designation of Beneficiary form.  Pl.'s Stmt. ¶¶ 56-59.

Nevertheless, as the claims to the benefits payable from the Central Pension Fund were adverse and conflicting, the Fund filed the present Complaint in Interpleader to "permit the Defendants to make a full airing of their competing claims."  Compl. ¶ 41.  The Central Pension Fund named as Defendants all eight possible claimants to benefits payable by the Central Pension Fund as a result of the death of Mr. Bell.  In response to Plaintiff's Complaint, Ms. Bell and Diane Ballard, Mr. Bell's girlfriend, claimed entitlement to benefits payable by the Central Pension Fund.  *See* Darlene Evelyn Bell Answer, ECF No. [16]; Diane M. Ballard Answer, ECF No. [17].  Ms. Wall and James Michael Bell responded in support of the Fund's decision to pay the Death Benefit to Mr. Bell's four grandchildren. *See* Selena Marie Wall Answer, ECF No. [18]; James Michael Bell Answer, ECF No. [22].  On March 28, 2014, Plaintiff filed its Motion for Summary Judgment. Only Ms. Bell and Ms. Wall filed responses to Plaintiff's Motion. Plaintiff subsequently filed a reply.  Accordingly, this Motion is ripe and ready for review.

## II.    LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id*.  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor.  *Liberty Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### B. Standard of Review of ERISA Determinations

In considering the determination of benefits under an employee welfare benefit plan governed by ERISA, courts generally review the decisions of plan administrators *de novo*. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). If the plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, however, the Court must apply an abuse-of-discretion standard. *Id.* ("Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). Under the abuse of discretion standard, "[d]ecisions of administrators made for plans in the latter group . . . are reviewable only for reasonableness." *Block v. Pitney Bowes, Inc.,* 952 F.2d 1450, 1452 (D.C. Cir. 1992) (citing *Bruch,* 489 U.S. at 115).

To properly grant discretion under ERISA, the delegation of discretionary authority must be made by a plan document, it must be express, and it must be to a named fiduciary or its delegate:

> (1) The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities . . . among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities . . . under the plan.

29 U.S.C. § 1105(c). Here, the Central Pension Fund's Plan of Benefits grants the Board of

Trustees broad discretionary authority to administer the Plan. *See* Plan of Benefits, Appx. 73, §
2.04 ("The Board shall have the responsibility and *discretionary authority* for: (a) making
determinations as to the eligibility of an Employee to participate and to receive any benefit
provided hereunder, to construe and interpret the terms of the Plan and to afford any such
individual dissatisfied with any such determination or interpretation the right to seek review
upon written request to the Board; . . .") (emphasis added); Restated Agreement and Declaration
of Trust, Appx. 60-61, § 5.18 (". . . the Trustees shall have full and exclusive discretion to
determine all questions of coverage and eligibility, methods of providing or arranging for
benefits and all other related matters."); *id.* at Appx. 63, § 6.3 ("The Trustees may in their sole
discretion compromise or settle any claim or controversy in such manner as they think best . . .").
Accordingly, the Court shall review the Trustees' beneficiary determination for abuse of
discretion.

## III.   DISCUSSION

Having reviewed the record in this case and the arguments presented by the parties in
their briefing, the Court concludes that the Central Pension Fund did not abuse its discretion in
determining that Darlene Evelyn Bell is not entitled to a Qualified Preretirement Surviving
Spouse Annuity or Death Benefit, and that, instead, Mr. Bell's four grandchildren are entitled to
the Death Benefit pursuant to the November 16, 2011, Designation of Beneficiary form signed
by Ms. Wall on Mr. Bell's behalf.  The other potential claimant, Diane Ballard, who responded
to Plaintiff's Complaint in Interpleader and claimed to be entitled to the Death Benefit, did not
file a response to Plaintiff's Motion for Summary Judgment.  The Court finds that Ms. Ballard
has effectively conceded her claim.  In light of Ms. Ballard's nonresponse and the Court's
finding that the form designating Ms. Ballard as the Death Benefit Beneficiary was superseded

by a valid Designation of Beneficiary form naming Mr. Bell's four grandchildren as the Beneficiaries, the Court need not address the validity of the November 4, 2011, form designating Ms. Ballard as the Beneficiary to whom the Death Benefit is payable.  Accordingly, the Court's analysis shall focus on the reasonableness of the Fund's denial of Ms. Bell's claim and the award of the Death Benefit to the four grandchildren.

### A.  Darlene Evelyn Bell

In her Opposition, Ms. Bell argues that she is entitled to benefits paid by the Central Pension Fund for two reasons: (1) she was still legally married to Mr. Bell at the time of his death, and (2) she was named as a beneficiary of Mr. Bell's pension during their marriage and that designation was never validly changed.  D.E.B. Response at 2-5. The Court finds that the Central Pension Fund did not abuse its discretion in rejecting both of these arguments.

First, Ms. Bell has failed to raise a genuine issue of material fact as to whether she and Mr. Bell were married at the time of Mr. Bell's death.  In her initial contact with the Central Pension Fund claiming entitlement to Mr. Bell's Death Benefit, Ms. Bell identified herself as decedent's "former spouse."  Statement of Claim for Death Benefits, Appx. 111.  Likewise, in Ms. Bell's response to the present Complaint, she admits that Mr. Bell was not married at the time of his death and that she was divorced from Mr. Bell in 2002.  Darlene Evelyn Bell Answer, ¶¶ 14, 18.  Moreover, Mr. Bell's Death Certificate identifies his marital status as "divorced." Death Certificate, Appx. 113.  Most importantly, however, the Caldwell Circuit Court in Kentucky entered an "Interlocutory Decree of Dissolution of Marriage" on August 15, 2002, stating

> [i]t is hereby ordered and adjudged that the marriage between the parties hereto is irretrievably broken and same is hereby dissolved each of the parties is hereby restored to all the rights of a single person.

Divorce Decree, Appx. 143.   The Decree clearly states that, by the issuance of the decree on August 15, 2002, the marriage between Mr. and Ms. Bell was dissolved.   Ms. Bell argues that because the decree was an "interlocutory" decree, the divorce was never final and, therefore, she is still legally married to Mr. Bell.   D.E.B. Resp. at 2.   However, it is evident from the face of the decree that it was only an interlocutory decree in so far as the parties had "not provided an agreement which provides for the disposition of their property" and, thus, "all remaining issues [i.e. the disposition of property] of the . . . action [] remain[ed] open for further orders of this Court."   Divorce Decree, Appx. 143.   As Ms. Bell states herself in her Response to Plaintiff's Motion for Summary Judgment, the decree "ended our marriage, but did not address our marital assets."   D.E.B. Resp. at 2.   Ms. Bell has cited to no authority in response to Plaintiff's Motion for Summary Judgment or during the claims appeal process that supports the conclusion that her divorce from Mr. Bell was not final at the time of his death ten years later.   Accordingly, the Court finds that the Central Pension Fund did not abuse its discretion in determining that Ms. Bell was not the spouse of Mr. Bell at the time of his death.

The Central Pension Fund also did not abuse its discretion in determining that Ms. Bell in no way remained a beneficiary of Mr. Bell's pension fund at the time of his death.   While Ms. Bell is correct that she was listed as the Beneficiary of Mr. Bell's pension fund during their marriage, she was only a Beneficiary, per operation of the Plan, because she was his spouse.   It is undisputed that Mr. Bell never affirmatively designated Ms. Bell as the Beneficiary of his pension by completing a Designation of Beneficiary form. Accordingly, upon Mr. and Ms. Bell's divorce, Ms. Bell was no longer a Beneficiary of Mr. Bell's pension fund under the operation of the terms of the Plan.   As a "former spouse" not expressly designated as a Beneficiary, the only

way Ms. Bell would be entitled to any benefit would be if she had a Qualified Domestic Relations Order ("QDRO"), which creates a former spouse's right to benefits payable under her former spouse's pension plan.  With a QDRO, Ms. Bell would be entitled to a Qualified Preretirement Surviving Spouse Annuity from Mr. Bell's pension fund.  However, it is undisputed that Ms. Bell did not have a QDRO, accordingly, she is not entitled to a surviving spouse annuity.[3]  Therefore, without any evidence that the Central Pension Fund ever received a Designation of Beneficiary form naming Ms. Bell as the Beneficiary at any time, Ms. Bell was no longer a Beneficiary of Mr. Bell's pension fund following her divorce from Mr. Bell under the operative terms of the Plan, and, therefore, she was not a Beneficiary at the time of Mr. Bell's death.[4]

### B.  Four Grandchildren

The Court finds that the Central Pension Fund did not abuse its discretion in awarding the Death Benefit to Mr. Bell's four grandchildren per the Designation of Beneficiary form signed by Selena Marie Wall.  The Order for Emergency Appointment of Fiduciary clearly indicated on

---

[3] To the extent that Ms. Bell might be arguing that she is entitled to Mr. Bell's pension benefits because the Caldwell Circuit Court in Kentucky never adjudicated the disposition of marital assets between her and Mr. Bell, this argument is unavailing. Once Mr. and Ms. Bell's marriage was dissolved, Ms. Bell was no longer entitled to pension assets by the operative terms of the Plan since she was never specifically designated as a Beneficiary.  There is no evidence that Ms. Bell ever sought a QDRO from the Caldwell Circuit Court following their divorce giving her the right to receive all or a portion of Mr. Bell's benefits payable under the Plan. Accordingly, the non-resolution of any issues involving marital assets in no way entitles Ms. Bell to any pension benefits upon Mr. Bell's death.

[4] The Court also notes that even if the Court were to find the November 4, 2011, and November 16, 2011, Designation of Beneficiary forms invalid, Ms. Bell would still not be entitled to the Death Benefit because, as discussed, the Death benefit is either given to a *designated* beneficiary or, if no beneficiary is designated, the Participant's (a) spouse; (b) children and legally adopted children; (c) parents; (d) brothers and sisters; (e) executors or administrators in a representative capacity.  Ms. Bell falls into none of these categories. *See* Plan of Benefits, Appx. 84-85, § 12.05

its face that the emergency fiduciary had "full and complete emergency guardianship including the ability to make medical and financial decisions" and specifically indicated that the fiduciary had the power to "execut[e] instruments."  Emergency Fiduciary Order, Appx. 93-94.  Under Kentucky law, an emergency fiduciary, or guardian, has broad authority to act for the incompetent in all cases and substitute his or her judgment for that of the incompetent.  *See Strunk v. Strunk*, 445 S.W.2d 145, 148 (Ky. Ct. of Appeals 1969) ("The right to act for the incompetent in all cases has become recognized in this country as the doctrine of substituted judgment and is broad enough not only to cover property but also to cover all matters touching on the well-being of the ward."); *DeGrella By and Through Parrent v. Elston*, 858 S.W.2d 698, 704 (Ky. 1993) (describing a guardian's broad authority to act for the benefit of the ward and quoting an English case where the " '. . . Lord Chancellor permitted the allowance of an annuity out of the income of the estate of [a] lunatic earl as a retiring pension to the latter's aged personal servant' because the court was 'satisfied that the Earl of Carysfort would have approved if he had been capable of acting himself.' ").  Executing a Designation of Beneficiary form could reasonably be interpreted as within the bounds of the authority given to Ms. Wall by the Order for Emergency Appointment of Fiduciary.  There was also no concern that Ms. Wall was abusing her authority as an emergency fiduciary and acting with a conflict of interest because Ms. Wall executed the Designation of Beneficiary form to the benefit of Mr. Bell's four grandchildren, not herself.

Finally, it was not unreasonable for the Fund to accept the terms of the emergency fiduciary Order on its face even though there was an ongoing criminal investigation related to the Beneficiary form. The court order appeared valid on its face and the Central Pension Fund was not aware of any actual criminal charges or any conviction resulting from the criminal

investigation.  The Court has not been presented with any information indicating that there has been a resolution of the criminal investigation even though several years have passed since the investigation was initiated.  Accordingly, the Court finds that the Central Pension Fund did not abuse its discretion in accepting the validity of the Designation of Beneficiary form signed by Ms. Wall and awarding the Death Benefit to Mr. Bell's four grandchildren as designated on the Beneficiary form.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the Central Pension Fund did not abuse its discretion in denying Ms. Bell's claim to the Death Benefit and, instead, awarding the Death Benefit to Mr. Bell's four grandchildren: James Austin Wayne Bell, J.C.B., C.I.W., and C.J.W. Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE